IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRANNON HOLMES and
ANTHONY MCMAHAN,

OPINION & ORDER

Plaintiffs,

v.                                                           15-cv-4-jdp

ROADVIEW, INC.,

Defendant.

Plaintiffs Brannon Holmes and Anthony McMahan allege that defendant Roadview, Inc. underpaid them, and other similarly situated employees, for their overtime work, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, and in violation of Wisconsin state law, Wis. Stat. § 103.03. The court approved a stipulated conditional certification for a collective action under the FLSA, consisting of 69 current and former employees. After plaintiffs provided notice to the putative class, 15 people opted in. The parties now seek court approval of their class action settlement. Plaintiffs also ask the court to certify a class under Federal Rule of Civil Procedure 23 for their state law claims.

The court will certify the proposed class, accept the proposed settlement, approve the proposed notice to the class and settlement administration plan, and set a final fairness hearing.

BACKGROUND

Plaintiffs have alleged that Roadview failed to adequately pay them by implementing a fluctuating work week payment method. Pursuant to this method, field service operators like plaintiffs who worked at least 40 hours per week were paid a fixed amount each week. If

they worked more than 40 hours per week, they were paid only 50 percent of their regular rate for those hours. If they worked fewer than 40 hours per week, they were paid at a lower rate.

Plaintiffs filed a complaint alleging that Roadview's payment methods violated the FLSA requirements regarding overtime compensation. Generally, the FLSA requires that overtime—hours worked in excess of 40 hours per week—be paid at 150 percent of the hourly rate. 29 U.S.C. § 207(a)(1). Under certain conditions, overtime compensation may be calculated using the fluctuating work week payment method. Under that method, Roadview could pay a weekly fixed-base salary, regardless of how many hours the employee actually worked, plus an additional overtime rate of 50 percent of the regular hourly rate for every hour more than 40 per week. 29 C.F.R. § 778.114(a). The regular hourly rate for that week equals the fixed-base salary divided by the total hours worked that week, including the overtime hours. *Id.*

But Roadview may use the fluctuating work week payment method only if: (1) its employees' hours fluctuate week-to-week; (2) its employees receive a fixed weekly salary (excluding overtime premiums) regardless of the number of hours worked; (3) its employees' fixed-base salaries compensate them at a rate no less than the legal minimum wage for all hours worked; (4) its employees receive at least 50 percent of their regular hourly pay for all overtime hours worked; and (5) Roadview and its employees have a "clear mutual understanding" that the fixed salary "is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." *See id.* § 778.114(a)-(c). Plaintiffs alleged that

Roadview paid them a lower salary for weeks when they worked fewer than 40 hours, violating the second and fifth requirements.

Wisconsin law also regulates overtime wages and provides that employers "shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." Wis. Admin. Code DWD § 274.03. Violations are enforced under Wis. Stat. § 103.03. Whether the FLSA fluctuating work week payment method is allowed under state law is an open question.

After plaintiffs filed their complaint and the parties exchanged discovery, the court approved a stipulated conditional certification for the FLSA collective action and approved of the notice. Dkt. 26. Fifteen people opted in. The parties then completed mediation and submitted their joint motion for class certification (relating to their state law claims) and for preliminary approval of their settlement. The proposed settlement provides a fund of $155,000 total for plaintiffs, all members of the collective action who opted in, and all members of the proposed class unless they opt out. Dkt. 52. The total amount includes attorney fees and costs, which are capped at 33 percent of the fund. The settlement also provides that the class representatives will receive $5,000 in addition to their share of the fund. The rest of the class is to receive payments from the fund unless they opt out.

The court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and over the state law claims under 28 U.S.C. § 1367.

ANALYSIS

The parties have moved for certification of their proposed class and for approval of their settlement, as required under Rule 23(e). The court will first address the certification and then settlement.

**A.  Class certification**

The parties already have a conditionally certified FLSA collective action. For their state law claims, they request certification of a proposed class of:

> all persons who have been or are currently employed by Roadview, Inc. as Field Service Operators who worked hours over forty (40) per workweek and were paid on the fluctuating workweek pay method and who were paid reduced wages during weeks they worked less than forty (40) hours a workweek at any time from January 5, 2013 to August 12, 2015.

Dkt. 48, at 2. To be certified, Rule 23(a) requires that a class satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation. The class must also satisfy one subsection of Rule 23(b). In this case, Rule 23(b)(3) applies; it requires a showing that the common issues predominate other issues, and that the class action method provides the best way to resolve those issues. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."). In a settlement context, the court rigorously examines whether the class meets the requirements, in an effort to mitigate the lack of an adversarial relationship between the parties, and to identify potential conflicts of interest. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Accordingly, plaintiffs must go beyond their pleadings and use evidentiary proof to satisfy Rule 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder is impracticable. There is no explicit cut-off, but the Seventh Circuit has found classes of 40 members to be sufficient. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). The parties allege that there are 69 people who fall within the class, which is large enough to make joining them all impracticable. They have satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact that are common to the class"; or, more accurately, common answers to those questions. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In this case, all of the proposed class members share common facts: they suffered the same alleged underpayment for their overtime hours doing the same kind of work. The specific number of hours of underpayment for each member may vary, and thus each member's share of the settlement fund may vary. But their shared experience serves as a "common nucleus of operative fact" sufficient to satisfy Rule 23(a)(2). *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." (citation omitted)).

The parties also contend that the purported class members share a common question of law: does Wisconsin law permit payment of overtime based on the fluctuating workweek payment method? Because the answer to this question would resolve the issue for all class members, they have met the commonality requirement.

### 3. Typicality

Typicality is satisfied if the class representatives' claims have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th

Cir. 2009) (citation omitted). Here, plaintiffs Holmes and McMahan seek appointment as class representatives. They allege claims based on the same questions of law and fact as the rest of the class, as described above. They are members of the class and worked as field service operators under the fluctuating workweek payment method. They have satisfied the typicality requirement.

### 4.  Adequacy of representation

The question of adequate representation involves two inquiries: (1) whether the class representatives' interests are aligned with those of the class; and (2) whether class counsel is capable of litigating the case. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified,* (Sept. 22, 2011). As members of the class, Holmes and McMahan have no apparent conflicts with the rest of the class. Their interest in resolving the matter is the same as the class's interest. The only added benefit that they seek is an extra $5,000 for their service, as provided in the settlement agreement. Dkt. 52, at 4. Accordingly, they are adequate representatives.

Hawks Quindel, S.C. seeks appointment as class counsel. The court must consider the work counsel did to identify or investigate the claims, counsel's experience in similar cases, counsel's knowledge of wage and hour law, and the resources that counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A). Hawks Quindel has represented plaintiffs since they began the case. As counsel, Hawks Quindel investigated the claims, conducted legal research and discovery, reviewed the discovery and calculated each class member's potential damages, and negotiated the proposed settlement agreement in this case. The firm's history with this case suggests that it has competently and vigorously represented the class thus far. Additionally, Hawks Quindel has successfully handled other wage and hour class action cases

in this district. In addition to the significant resources that Hawks Quindel has already expended in this case, it represents that it will dedicate sufficient resources to see the case through the administration of the settlement. Accordingly, Hawks Quindel has satisfied the Rule 23 requirements and will be appointed class counsel.

### 5.   Rule 23(b)(3)

Plaintiffs and the class that they represent seek monetary damages rather than equitable relief. Therefore, Rule 23(b)(3) is applicable. It requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine whether that is the case, courts consider the class members' interests in individually controlling their own claims, the nature and extent of any other litigation about the controversy, the desirability of concentrating the litigation here, and any management challenges that the case may present. *Id.*

First, although class members have an interest in controlling their own claims, they also have an interest in the efficient resolution of their claims, which the class action and proposed settlement provide. Individually litigating each class member's claims would be expensive and time consuming. And the parties have already determined each class member's share of the settlement fund, based on how many undercompensated hours they worked. Dkt. 52, at 4. Second, there is no indication that any of the class members have other litigation related to the claims at issue in this case. Third, consolidating the issues into one case and resolving them is efficient. And finally, the case presents no management difficulties because the parties have settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

7

("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

The goal is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (citing Fed. R. Civ. P. 23 Advisory Committee Notes). Because consolidation of the class members' claims into a class action would accomplish that goal, a class action is the best way to proceed. The court will certify the class for the purpose of settlement.

**B. Preliminary settlement approval**

The parties seek preliminary approval of their proposed settlement. The settlement provides for a fund of $155,000, which includes compensation for plaintiffs, collective action participants, and class members, as well as attorney fees and costs. It also lays out the procedures for notifying the class, getting final approval of the settlement, and administering it.

At this point, the parties seek only preliminary approval. After preliminarily approval, the parties will send notice to the class, provide the opportunity for opposition, and attend a final fairness hearing to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). To preliminarily approve the settlement, the court considers the strength of plaintiffs' case compared to the settlement amount, the complexity, length and expense of the litigation, any opposition to settlement, the opinion of competent counsel, and the stage of the proceedings (including the amount of discovery completed) at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

1.  **The strength of plaintiffs' case on the merits balanced against the amount offered in the settlement**

The most important settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Id.* (citations omitted). The settlement offers a $155,000 fund, of which plaintiffs, collective action participants, and class members will each receive a certain pro rata amount. The parties agreed on those amounts, which were calculated based on each person's claim and whether they are participating in the collective action, the class action, or both. The specific payments vary, but may reach over $5,000 for some members.[1] Dkt. 58-1. On the other side, the merits of plaintiffs' claims are unclear. Their likelihood of success on one significant part of the case depends on the answer to a question of law that the parties dispute: whether Wisconsin law permits payment of overtime based on the fluctuating workweek payment method. Settlement mitigates plaintiffs' risk of losing that issue and failing to recover at all. Therefore, the balance favors approving the settlement.

2.  **Length, expense, complexity of litigation**

The potential length, expense, and complexity of litigating these claims through trial weigh in favor of settlement. Although litigation of these issues would not be particularly complex, prompt settlement benefits all parties by avoiding long, drawn-out litigation. It gives plaintiffs, collective action participants, and class members a meaningful amount of compensation, and it spares defendants the cost of continuing to pay their attorneys through a trial.

---

[1] The court is not approving the specific amounts payable to each class member at this point. For purposes of preliminary approval, the court accepts class counsel's calculations.

### 3. Opposition

The proposed settlement agreement provides for class member objections to the agreement, to be filed within 45 days of the notice and within 60 days of this order. Dkt. 52, at 7-9. Because the members have not yet had this chance, court consideration of this factor is premature.

### 4. Opinion of counsel

In deciding whether to approve the settlement, the court is "entitled to give consideration to the opinion of competent counsel." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Counsel in this case support the settlement. They are experienced and competent. And there is no indication of collusion; they represent that the settlement is the result of arm's-length negotiation through mediation. For the purpose of preliminarily approving the settlement, the court accepts counsel's opinion in favor of approval.

### 5. Amount of discovery and stage of proceedings

Plaintiffs filed this case on January 5, 2015. Since then, they have engaged in discovery, reviewed the discovery that they received, interviewed those who opted into the collective action, created a damages model, and successfully mediated the case with Roadview. On September 24, 2015, they moved for preliminary approval. This progress represents significant time and resources and indicates that the parties have considered the merits and risks of litigating compared to settling. Accordingly, this factor weighs in favor of approval.

## C. Attorney fees and costs

Class counsel, Hawks Quindel, seeks its reasonable attorney fees and costs under Rule 23(h). From the $155,000 settlement fund, it requests $4,862.28 in costs and

$51,666.67 in attorney fees. To determine whether the requested fees are reasonable, the court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). The aim is "to base the award on relevant market rates and the *ex ante* risk of nonpayment." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011).

Plaintiffs and their counsel agreed to a 33 percent contingency fee, which they contend is consistent with the market rate. They also based the contingent fee on the risk of losing the case and receiving zero compensation. In light of the significant work that counsel has done and will continue to do, a 33 percent rate appears reasonable. But the $51,666.67 requested attorney fees reflect 33 percent of the total $155,000 settlement fund. That is not the appropriate comparison. "The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. Class members will receive their share of remainder of the fund after costs, including the cost of administering the settlement, are taken out. Hawks Quindel will be awarded its reasonable fees and costs, but the court will determine more precisely what those are following the final fairness hearing.

## D. Class notice and settlement administration

The parties have moved for approval of their proposed notice to the class. Dkt. 52, at 23-27. Hawks Quindel also asks to be appointed settlement administrator, offering to send notice and to later disburse payments from the fund.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances." It must plainly state the nature of the action, the definition of the certified

11

class, the issues, the option for members to appear through an attorney, the option to be excluded from the class, and the binding effect of judgment on participating class members. Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice describes the case and overtime wage issues in plain language. In addition to providing general language, the notice is particularized in that it provides class members with the gross settlement amount that counsel calculated for each of them. It also describes the options open to class members, including the options to object and to exclude themselves. The court will require one modification of the end of Section 3. The last sentence of that section must be revised to state: "Assuming the Court approves the settlement, we estimate that your gross settlement amount will be approximately: $[insert] This amount will be reduced by attorney fees, costs, and expenses." With this modification, the notice satisfies the Rule 23 requirements, and the court will approve the notice and order Hawks Quindel to send it to the class as administrator.

ORDER

IT IS ORDERED that:

1. The parties' joint motion for preliminary approval of their settlement agreement, Dkt. 48, is GRANTED.

2. Hawks Quindel, S.C. is appointed class counsel settlement administrator and is ordered to send notice to the class within 14 days of the issuance of this order.

3. Brannon Holmes and Anthony McMahan are appointed class representatives.

4. Hawks Quindel's petition for attorney fees and costs, Dkt. 53, is GRANTED.

5. The parties' joint motion for status conference, Dkt. 59, is DENIED.

6. All papers in support of final settlement approval must be filed by July 14, 2016. The final fairness hearing is scheduled for July 28, 2016, at 9:00 a.m.

Entered April 14, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

13